```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
DAWN PRYSTAJKO,

                        Plaintiff,              05-CV-6271

             v.                                 DECISION
                                                and ORDER
LOWE'S HOME CENTERS, INC.,

                        Defendant.
_____
```

## INTRODUCTION

Plaintiff, Dawn Prystajko ("plaintiff"), brings this action pursuant to Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law, claiming that she was subjected to sexual harassment while working for her former employer, defendant Lowe's Home Centers, Inc., ("defendant" and/or "Lowe's"), and that she was fired from her job in retaliation for complaining of sexual harassment. Specifically, plaintiff claims that she was subjected to quid pro quo sexual harassment as a result of being forced to have sexual intercourse with the Administrative Manager, Chris Fox ("Fox") as a condition of her employment. Plaintiff claims she continued to have relations with Fox even after she was hired in order to keep her job, but that after she ended their sexual relationship, and complained to a manager, she was terminated from her employment.

Lowe's contends that plaintiff was terminated for violating company policy, and that discrimination or retaliation played no role in the decision. Lowe's contends that there is no evidence that Fox played a role in the decision to terminate plaintiff's

employment, and that plaintiff failed to report the alleged harassment. Lowe's claims that it had no knowledge of the alleged harassment, and therefore, as a matter of law, could not have retaliated against the plaintiff.

Lowe's now moves for summary judgment, arguing that no reasonable jury could find that it discriminated against plaintiff as she claims. For the reasons set forth below, defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff Dawn Prystajko completed a Lowe's application for employment, in person, prior to a new store opening in Webster, New York. Fox handed plaintiff an application, which she completed and returned. Fox reviewed plaintiff's application, asked several questions concerning the information on her application and related that he would see what he could do and would give her a call. Later, the Store Manager Scott Lee ("Lee") called plaintiff for an interview.[1] Plaintiff was hired by Lowe's for the position of Head Cashier and commenced her employment around mid-November 2003.

Plaintiff testified under oath that she willingly had sexual intercourse with Fox approximately 11 times and did not express any reluctance or objection to Fox to have consensual sexual

---

[1] According to plaintiff, Fox called her and told her to come to a Lowe's interview with him at the Homewood Suites in November 2003. At that meeting, plaintiff claims Fox made it clear that if plaintiff wanted a job at Lowe's she would need to have sex with him. Plaintiff and Fox did in fact have sexual intercourse at that time.

intercourse during these events.[2] With respect to the first alleged sexual interaction, at no time did plaintiff request Fox to stop or refuse his advances. See Ex. 1 pp. 57-58, 66. During the following sexual encounters,[3] the only reference to plaintiff's job was once when Fox asked if plaintiff liked her job. See id. p. 97. Further, plaintiff described her interactions with Fox as "always very pleasant." See id. p. 103. In February 2004, however, plaintiff told Fox their relationship was becoming a "little nerve racking ... the weather is getting shitty. I don't want to keep driving from Greece [where she lived] to Henrietta [where the hotel was located], and it's just very awkward at work." See Ex. 1 pp. 100-101, 190.

During the time from November 2003 through February 2004 plaintiff contends that two or three times Fox made a "v" with his fingers, brought the "v" to his chin, and stuck out his tongue to his chin. See Ex. 1 p. 117. In response, plaintiff would "shake [her] head and walk away." See id. Fox made no other gestures towards her and she did not report these gestures to anyone at

---

[2] Fox testified at his March 30, 2006 deposition that he did not engage in a sexual relationship with plaintiff nor did he invite her to his hotel room as she claims. During the deposition of Fox, he was no longer employed by Lowe's. Notwithstanding this testimony, for purposes of this motion, Lowe's accepts plaintiff's allegations as true.

[3] Plaintiff continued to meet Fox at a hotel and engage in sexual intercourse with him on at least ten more occasions. See Ex. 1 pp. 88, 89, 90 and 91-93.

Lowe's.[4] See id. In addition, plaintiff testified that she was not subjected to any unwanted sexual advances or sexual touching. As an example, Fox did not use any offensive or harassing language towards plaintiff in the workplace. He also never touched her in the workplace in the manner that plaintiff found offensive or harassing. Further, Fox never showed her any pictures of objects in the workplace that she found offensive or harassing. See Ex. 1 p. 118. Plaintiff also claims that Peter Szklanka ("Szklanka"), a Zone Manager (but not her direct supervisor) called her on the store walkie-talkie one day and asked her if she was wearing a thong because he could "see the crack of Dawn." See id p. 119. Plaintiff responded, "you're too much" and then hung up on him. See id p. 121.

She also testified that Szklanka said to her "he was getting ready to go back home to Buffalo and wanted to know if [she] would meet him someplace." See id p. 119-120, 124. Although Szklanka did not specifically mention it, plaintiff contends that she interpreted his question to be a request for sex. See id. Plaintiff did not report the incident to Lowe's even though she was aware of Lowe's policies requiring employees to report sexual harassment and providing a number of ways in which to do so. Plaintiff also

---

[4] Plaintiff received a New Employee Orientation Guide at the commencement of her employment that describes Lowe's policies and procedures. In addition, she executed an acknowledgment of receiving notice of Lowe's policies and also of receiving training of Lowe's policies. According to defendant, Lowe's Orientation Guide, Equal Employment Opportunity policy, No Harassment policy and Open Door policy instruct employees that they should report any perceived sexual harassment to the Store Manager, the District Manager, or the Regional Human Resources Director. Moreover, these policies advise employees that they may report any sexual harassment through Lowe's Alertline, Lowe's Internal Audit Department, or Lowe's Fairness Programs Department.

testified that co-worker Shanny Moreno asked if she would like to go out "for a quickie." See Ex.1 p. 119. She responded and said "get lost" and she "laughed it off." See Ex. 1 p.123.

More generally, plaintiff contends that on two occasions she heard Szklanka make comments such as "oh, look at her" regarding customers and, on two occasions, saw Szklanka "grab his crotch if a pretty customer walked by." See Ex. 1 p. 122. At another time, plaintiff claims she heard Szklanka and Fox say to employee Tina Nowak, "[w]e got better use for that whipped cream" that was in her coffee. See id p. 126. Once again, plaintiff did not report any of these incidents to anyone at Lowe's. Thus, notwithstanding her awareness of Lowe's policies relating to harassment, plaintiff never approached any managers concerning behaviors she now alleges to be sexual harassment, and never reported to anyone at Lowe's that any co-employee or anyone in management had acted in a harassing or offensive manner towards her. See Ex. 1 pp. 129-130.

During the time that plaintiff was engaged in consensual sexual intercourse with Fox, she testified that she received the "easy jobs," the "cake work." See Ex. 1 p. 101. For example, plaintiff explained that she did not have to stand at the store's entrance to watch the security button, and was permitted to answer phone calls and to stay behind a desk. See id. After the sexual intercourse with Fox ceased, plaintiff stated that she began receiving all of the "shitty jobs" and the "bad hours," and that her

work schedule changed to include responsibility for the less desirable job of standing by the front door to wait for the alarm button to sound and was "put by the front door when it was cold."[5] See id p. 107. However, plaintiff testified that it was part of the job duties of a Head Cashier to stand by the front door and wait for the security alarm to sound. See id p. 111. The job description for Head Cashier even lists the required duties as including "[m]onitoring exit doors for security and loss prevention purposes." See Ex. 7. Moreover, plaintiff never reported to anyone at Lowe's that she thought she was being retaliated against or that her working conditions had changed unfairly. See Ex. 1 pp. 129-130.

In February 2004, after being employed for only three months, plaintiff took a leave of absence from Lowe's for a worker's compensation injury she supposedly suffered while working for a previous employer. See Ex. 1 pp. 26-28. Pursuant to Lowe's policies and procedures concerning her leave of absence, plaintiff was expected to comply with such policies including keeping Lowe's informed with bi-weekly updates of leave status and expected return to work date. See Ex. 3 and Ex. E. Plaintiff's last day of active employment was on February 26, 2004. See Ex. 1 p. 159. Although she did not previously inform Lowe's of her need to take leave, on February 27, 2004 plaintiff gave an administrative assistant a doctor's note excusing her from work from February 27, 2004 until her return-to-work date of March 11, 2004. According to Lowe's

---

[5] While describing her "cake work," plaintiff testified that "other head cashiers had to stand by the cold door ...." See Ex. 1 p. 102.

company policy, an employee must keep Lowe's properly informed of her status during a medical leave of absence. See Ex. 3.

On April 16, 2004, former Store Human Resources Manager, Susan Holtz ("Holtz") sent plaintiff a letter informing her that Lowe's was trying to contact her regarding her leave status and that Lowe's would need a doctor's note excusing her from work for the time she had been out. See Ex. 1 pp. 164-165; Ex. 3. On the same day, Holtz sent similar letters to three other employees who were out on leave and had not kept Lowe's informed of their leave and return-to-work status. See Ex. 3; Ex. 4 pp. 206-207. According to plaintiff, upon receiving Holtz's April 16 letter, she called the store and informed the administrative assistant that she was supposed to return to work in mid-May and that her doctor filled out the leave of absence forms. See Ex. 1 pp. 167-168. Plaintiff alleged that she had sent a second doctor's note to Holtz excusing her from work within several days of March 11, 2004. See id. Lowe's however has no record of ever receiving the completed form by the physician as required by Lowe's leave policy. See Ex. 3.

Six weeks beyond the original date plaintiff was scheduled to return to work and during which time she failed to keep Lowe's informed of her status as required by Lowe's Leave of Absence Policy, plaintiff was terminated from her employment on April 23, 2004. According to Holtz, she decided to terminate plaintiff because she violated company policy by failing to keep Lowe's informed of her status during her medical leave. See Ex.3. Lowe's contends that plaintiff never complained to Holtz about sexual

harassment, and Holtz was not even aware of plaintiff ever complaining to anyone about sexual harassment in the workplace. Further, Holtz also terminated a male employee because of his failure to keep Lowe's informed of his leave status. See id.

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure prescribes summary judgment where the evidence demonstrates that there is no genuine issue of fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. Proc. 56(c). When considering a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. Gallo v. Prudential Residential Serv., 22 F.3d 1219, 1223 (2d Cir. 1994). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Id. at 1224.

Summary judgment dismissing an employment discrimination case is warranted only where a plaintiff cannot provide evidence to support an essential element of her claim. See Schanbel v. Abramson, 232 F.3d 83 (2d Cir. 2000); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998). It is well settled that the party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." Rule v. Brine, Inc. 85 F.3d 1002, 1011 (2d

Cir. 1996). Rather, such affidavits are to be disregarded. See <u>Mack v. United States</u>, 814 F.2d 120, 124 (2d Cir. 1987).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." See <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotations omitted). Nonetheless, to defeat a motion for summary judgment, a plaintiff must rely on more than mere conclusory allegations that the discrimination occurred. "Indeed, the salutary purposes of summary judgment--avoiding protracted, expensive and harassing trials--apply no less to discrimination cases than to commercial or other areas of litigation." See <u>Meiri v. Dacon</u>, 759 F.2d 989,998 (2d Cir.1985).

## II. **Plaintiff's Title VII and Human Rights Law Discrimination Claims**[6]

1.   *Quid Pro Quo* Harassment

To state a prima facie claim for *quid pro quo* sexual harassment in violation of Title VII, plaintiff must show that (1) she was subjected to unwelcome sexual conduct or an unwelcome sexual advance, and (2) her reaction to that conduct was used as the basis for an employment decision. See <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 753 (1998)(To state a quid pro quo claim

---

[6] The standard governing sex discrimination claims is the same whether pursued under Title VII or the Human Rights Law. <u>See</u> <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1305 n.4 (2d Cir.1995).

plaintiff must allege that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands); Kahn v. Objective Solutions, Int'l, 86 F. Supp. 2d 377, 381 (S.D.N.Y. 2000), citing Barcher v. New York Univ. Sch. of Law, 993 F.Supp. 177, 184 (S.D.N.Y. 1988), aff'd, 172 F.3d 37 (2d Cir. 1999). "An employer is presumed liable for the sexual harassment of an employee by a supervisor with immediate or successively higher authority over her." See Carter v. New York, 310 F.Supp. 2d 368, 376 (N.D.N.Y. 2004).

Plaintiff cannot satisfy the first prong of the prima facie case because the record is uncontroverted that she engaged in a consensual sexual relationship with Fox. She repeatedly and willingly engaged in sexual intercourse with Fox at least eleven times. Plaintiff testified under oath that she voluntarily met with Fox at his hotel room and engaged in sexual intercourse. See Ex. 1 pp. 90-93. Indeed, plaintiff had sexual intercourse with Fox seven time before she even began her employment at Lowe's and four more times after starting her employment at the store. In her deposition, plaintiff confirmed the sexual activities with Fox were mutually agreeable and were not "unwelcome." For example, plaintiff testified as follows:

    Q:   Were you kissing him back?
    A:   Yes
    Q:   At any time did you object or protest to him as he was kissing you?
    A:   No, I did not.
    Q:   ... how long were you kissing each other?

> A: I don't know, a few minutes.
>
> Q: What happened after that?
>
> A: He had pressed himself up against me and things escalated from that point.
>
> Q: You had sex with him?
>
> A: Yes, I did.

See Ex. 1 p. 66.

Plaintiff's testimony concerning her sexual relationship with Fox defeats her claim of *quid pro quo* sexual harassment. However, after Lowe's filed its papers in support of summary judgment, plaintiff prepared an affidavit, which was verified on the same day that plaintiff's opposition papers were due, contradicting her earlier testimony. Contrary to her deposition testimony, plaintiff now states, among other things, that she did not want to have sexual intercourse with Fox "but reluctantly acquiesced to get the [Lowe's] job to support my children" and that Fox stated to her "in words and actions that to stay employed ... I would need to continue to go along with his requests for sex." See Prystajko Aff. Ex. H, ¶¶ 6-10. Notably, plaintiff does not provide any particular or corroborating information in her affidavit that would lend credibility to these conclusory allegations and therefore, they must be disregarded on that basis alone. See Podell v. Citicorp Diners Club, Inc. 112 F.3d 98, 101 (2d Cir. 1997) (litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his or her version of relevant events is not fanciful).

Moreover, the statements in plaintiff's affidavit are unsupported by the record and directly contradict her extensive deposition testimony wherein she testified to the consensual nature of her relationship with Fox and never gave any indication that she was pressured or forced to have sex with him, or that their sexual relations were in any way unwelcome. Accordingly, plaintiff's affidavit must be disregarded. See Mack, 814 F.2d at 124 ("It is well settled in this circuit that a party's affidavit which contradicts [her] own prior deposition testimony should be disregarded on a motion for summary judgment.") Thus, plaintiff cannot now ignore the fact that her relationship with Fox was, at all times, consensual and voluntary and, therefore, no acts directed towards her by Fox can be considered "unwelcome."

Further, plaintiff fails to demonstrate the second prong of the prima facie case for *quid pro quo* sexual harassment, because her alleged decision to stop the sexual relationship - in part because the weather was bad - was not used as the basis for any adverse employment decision. The only employment action that could be considered adverse as a matter of law is the termination of her employment.[7] Plaintiff's refusal to continue the relationship with Fox was not a consideration nor a basis for the decision to terminate her employment or any other adverse action. Plaintiff's

---

[7]As previously noted, plaintiff seems to argue that the fact that she was required to perform the duties expected of all Head Cashiers was an adverse action, as was the purported change in her work schedule to include responsibility for standing by the front door to wait for the alarm button to sound. Ex. 1 p. 108. Even plaintiff admits that this was always the job of the head cashier "[w]hoever was on at that time." Ex. 1 p. 113. The job description she received for Head Cashier even lists as one of the required duties to "[m[onitor exit doors for security and loss prevention purposes." Ex. 1 p. 143.  In fact, plaintiff admits that she is not aware of any current or former employee who was treated better than her. Ex. 1 p. 193. Thus, performing the duties required of her position does not constitute an adverse employment action upon which a claim may be based.

employment was terminated by Holtz because plaintiff violated company policy by not communicating with anyone from Lowe's between February 27 and April 16, 2004, over a full month after her doctor's excuse had expired on March 11, 2004 regarding her continued absence. This was a clear violation of Lowe's leave policy, which required employees to keep the company informed about their leave status at least bi-weekly. Therefore, defendant is entitled to summary judgment.

   2.   <u>Hostile Work Environment</u>

"[T]o prevail on a hostile work environment claim, a plaintiff must demonstrate: (1) that [the] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [the] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." <u>See</u> <u>Schwapp</u>, 118 F.2d at 110. Whether the environment may be considered sufficiently hostile or abusive to support such a claim is to be measured by the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance. <u>See</u> <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993). Proving the existence of a hostile work environment involves showing both "objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." <u>See</u> <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir.2002).

Defendant argues that no reasonable jury could find that the conditions to which plaintiff claims to have been exposed are severe or pervasive enough to establish a hostile work environment claim. Defendant also contends that it is entitled to summary judgment on this claim because plaintiff failed to properly report the alleged harassment. Plaintiff alleges that she was subjected to unwanted comments based on her gender including the following: (1) a "walkie-talkie" conversation in which Szklanka asked her if she was wearing a thong because he could "see the crack of Dawn;" (2) a conversation in which Szklanka allegedly said he was going back home to Buffalo and wanted to know if she would meet him someplace; (3) a conversation in which a co-worker allegedly asked her if she would like to go to lunch for a "quickie" and she responded by laughing and telling him to get lost; and (4) two or three times when Fox purportedly made a suggestive "v" gesture.

"Simple teasing, offhand comments and isolated incidents (unless extremely serious)" will not survive summary judgment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Considering all of these comments including the "walkie-talkie" and "quickie" comments as well as the "v" gesture, this Court finds that the above conduct is neither sufficiently severe or pervasive to constitute an objective or subjective hostile work environment. Moreover, Szklanka's comments regarding going home to Buffalo and suggesting to meet someplace, without more, amounts to, at most, offensive, childish or unprofessional behavior, which is not the type of conduct proscribed by Title VII. See Cosgrove v. Fed. Home

Loan Bank of N.Y., 1999 WL 163218 at *20 (S.D.N.Y. 1999). In the instant case this Court finds that the alleged conduct falls well short of establishing a hostile environment and thus summary judgment on plaintiff's hostile work environment claim is granted.

### III. **Plaintiff's Retaliation Claim**

Retaliation discrimination claims are analyzed under the McDonnell Douglas burden-shifting test. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this test, for a plaintiff to prevail she must first establish a prima facie case of discrimination by showing: (1) she is a member of a protected class; (2) she was qualified to hold her job; and (3) she was subjected to an adverse employment action under circumstances giving rise to an inference of discrimination. See Schanbel, 232 F.3d at 83. Once the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason ("LNDR") for the adverse employment action. Once the defendant proffers a LNDR, the burden then shifts back to the plaintiff to show that the defendant's LNDR was pretextual and that the defendant's real motivation was discriminatory. Id.

Applying the above principles in the instant case, even if plaintiff is a member of a protected class and is qualified to hold her job at Lowe's, she cannot show the third element for retaliation, which is causation.

It is well settled that "[t[he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." See Cruz v. Coach Stores, Inc., 202 F.3d 560, 566

(2d Cir. 2000); see also Soliman v. Deutsche Bank AG, 2004 WL 1124689 *12 (S.D.N.Y. 2004). In Soliman, summary judgment was granted against the plaintiff's retaliation claim because the plaintiff never told his employer that his co-worker was sexually harassing him or making any statements that could reasonably be construed as such. Id. at *13. Likewise, plaintiff cannot demonstrate that she ever complained about any of the alleged conduct on which she attempts to base her claims. Plaintiff can provide no evidence that she engaged in any protected activity at any point during her employment at Lowe's, or that Lowe's was aware of any activity by plaintiff that could be considered protected.

Lowe's lawfully terminated plaintiff's employment due to her failure to comply with its leave requirements. Plaintiff took a leave of absence and failed to return to work on her expected return date. Plaintiff did not communicate with anyone from Lowe's between February 27, 2004 through April 16, 2004 concerning her absence in contravention of Lowe's policies and procedures. Lowe's terminated plaintiff because they determined that she did not properly keep Lowe's informed and did not submit all the required paperwork to Lowe's during her leave as required by the policies. Thus, this Court finds that plaintiff is unable to establish a *prima facie* case of retaliatory discrimination.

Even if plaintiff could demonstrate a prima facie case, she cannot establish that the LNDR offered by Lowe's, namely that her employment was terminated because she violated company policy in failing to keep Lowe's informed on a bi-weekly basis during her leave and failing to return to work from her leave, was pretextual. Plaintiff never registered a complaint of sexual harassment and

there is no evidence that Fox played any role in the decision to terminate plaintiff's employment. Holtz made the decision to terminate the plaintiff and another male employee because both violated company policy during their leave. Further, Holtz was not aware of either any allegedly protected conduct engaged in by plaintiff or her claimed sexual relationship with Fox. Therefore, defendant's motion for summary judgment on plaintiff's retaliation claim is denied.

## **CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment is granted and plaintiff's Complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                         s/Michael A. Telesca
                                         MICHAEL A. TELESCA
                                       United States District Judge

Dated:    Rochester, New York
            March 13, 2007